Filed 2/18/22  Daniel R. v. Elizabeth N. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DANIEL R., | B309235 |
| Petitioner and Appellant, | (Los Angeles County Super. Ct. No.  20STPT01442) |
| v. | |
| ELIZABETH N., | |
| Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Alison MacKenzie, Judge.  Affirmed.

Jeff Dominic Price, under appointment by the Court of Appeal for Appellant.

No appearance by Respondent.

_____

The trial court issued orders granting Elizabeth N. (mother) a five-year domestic violence restraining order against Daniel R. (father), sole custody of their three children, and child support in the amount of $3,763 per month.[1] The court limited father's time with the children to two-hour monitored visits every two weeks. Father appeals from the trial court's custody order, contending reversal is required due to procedural errors.[2] We affirm.

## *FACTUAL AND PROCEDURAL BACKGROUND*

Father and mother have three children together. The children were 17, 6, and 5 years old at the time father and mother filed their respective petitions initiating the underlying proceedings.

### 1.   *Father Files a Petition to Determine Parentage*

On June 22, 2020, father filed a petition to determine his parental relationship with the children.[3] As part of his petition,

---

[1]   Out of respect for their privacy interests, we do not name the children, and we identify the parents by their first names and last initial only. (Cal. Rules of Court, rule 8.90(b)(1).)

[2]   Although father observes that a domestic violence restraining order is appealable, he does not argue that order was improperly issued. Nor does he argue the court erred in limiting his visitation or in calculating or awarding child support.

[3]   Father and mother are not married. Father filed pre-printed Judicial Council forms pursuant to the Uniform Parentage Act (Fam. Code, § 7600 et seq.), which " 'provides the framework by which California courts make paternity determinations. (§ 7610, subd. (b).)' [Citation.]" (*In re L.L.* (2017) 13 Cal.App.5th 1302, 1309–1310.) In her written filings

2

father sought visitation with the children every weekend from Friday after school to Sunday evening during the school year and alternate weeks during summer break.  He also sought joint legal custody.  He asserted mother had prevented him from seeing the children since the parents ended their 18-year relationship on March 15, 2020.

## 2. *Mother Files a Petition for a Domestic Violence Restraining Order, Custody, Visitation, and Child Support*

One week after father's petition, mother filed a request for a domestic violence restraining order, protecting her and the children from father's harassment and abuse.  Mother also sought child support and custody orders.  She submitted a declaration describing domestic violence that began at the end of 2012 and continued into 2020.  During this time, father either hit or struck her with an object over 100 times.  He also kicked her and gave her a bloody nose.  The children were present during some of these incidents.

Mother described the most recent incident, which occurred on February 29, 2020, at her parents' home.  Her parents were away for the weekend.  Father and mother argued, and father hit the left side of mother's face with his open hand.  He pulled her up by her hair and pushed her head into the cushions of the couch so that she could not breathe.  She suffered vision and hearing issues as a result of the beating.

---

and oral testimony, mother has consistently identified father as the children's father, and that issue is not before us.

All further undesignated statutory references are to the Family Code.

In another incident occurring in 2015 or 2016, father pushed mother into a dresser in their bedroom, causing her to cut her forehead. The cut required five to seven stitches. In January 2019, while the family was in their car, father hit mother in the mouth, causing it to bleed and swell. Mother's declaration included photographs of her injuries. She also submitted text messages she sent to father regarding her injuries and begging him to stop the abuse. He did not regularly respond to mother's entreaties but occasionally apologized for his actions.

On the day mother filed her request, the court issued a temporary protective order protecting mother and her children. Mother's domestic violence petition was later deemed related to father's parentage case, and the matters were assigned to the same department for hearing.

Father did not directly deny the specific violent incidents mother described. In his written response, father asserted it was mother who initiated the domestic violence and he was unable to prevent the resulting altercations. He attempted to leave the house on February 29, 2020, the date of their last incident, but mother blocked the door. She assaulted him multiple times before he defended himself, physically moved her, and left. Father explained mother has a history of alcohol abuse and committed acts of physical and verbal abuse against him. Father stated, "I defend myself and made the mistake of harming her in self-defense to calm the conflict. Our relationship is toxic and I decided to move out for the safety of our children and myself."

3. ***The Hearing on the Domestic Violence Restraining Order***

On August 17, and September 14, 2020, the court held a contested hearing on mother's restraining order. Mother and

4

father testified as to the incidents described in their declarations. The photographs and text messages were admitted into evidence.

Mother explained she failed to report the prior domestic violence incidents because she was scared and also wanted the children to have a family. She explained she decided to file for a restraining order because she did not want the children to think domestic abuse was "okay."

Mother also testified she included the children in the request for restraining order because father spanked the children or flicked their ears. He once left a mark when he squeezed the six-year old's shoulder. Mother stated the children have observed father hit mother at least 30 to 40 times. They pointed to bruises on mother's body and said, "Daddy did that to you."

Father testified mother often grabbed his shirt, scratched him on the arm and the chest, and he believed she would harm him. He agreed to a restraining order protecting mother but argued there was no basis to include the children because he had not hurt them.[4]

At the end of the hearing on September 14, 2020, the trial court issued a five-year restraining order, finding mother had met her burden to demonstrate father engaged in an act of abuse under sections 6203 and 6320. The trial court found mother to be "entirely credible" and her testimony was supported by the text messages, photographs, and scars the court observed. The court found father "was entirely not credible," lacked insight into the abuse, and continued to blame mother for his violent actions. The court determined the children were protected parties

---

[4]  Father has apparently abandoned this argument on appeal.

because, while they were not physically hit, they were present and lived in a house "infused" with abuse.

The trial court continued the hearing to September 25, 2020, for the purpose of considering custody, visitation, and child support issues. The date selected was the date originally set for hearing on father's parentage petition. At the end of the hearing, the trial court granted mother sole legal and physical custody "for now" with the caveat that "that may change after the hearing on the 25th, but [the court] want[ed] to get you something in place for right now. . . ." At the prompting of mother's counsel, the court cited to section 3044, found it applied to the case, and that "at this point" father had not rebutted the presumption that it was not in the children's best interest for father to have joint or sole custody.[5] The court ordered two hours of monitored visitation for father once every other week and ordered that he participate in a batterer intervention program.

The parties were scheduled to attend mediation on custody and other issues on September 18, 2020, but the record is silent on whether any mediation took place.[6]

### 4. The Custody, Visitation, and Child Support Hearing

On September 25, 2020, at the scheduled custody, visitation, and child support hearing, father's attorney informed

---

[5] Section 3044, subdivision (a) creates "a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child . . . ."

[6] In his opening brief, father alternately indicated the mediation occurred but was "meaningless" and that it did not occur. For our purposes, it is immaterial whether the parties participated in the scheduled mediation.

6

the court that father no longer wished to retain him. Father confirmed those were his wishes, and the court relieved counsel. Father then requested a continuance to retain new counsel. He stated he would be "signing the paperwork" that day. The court denied the request because father had failed to demonstrate good cause for the continuance. The court advised father he could in the future seek modification of the court's orders after he retained new counsel.

At the hearing, the parties first discussed father's visitation, which the court ordered to remain monitored for two hours every other week. Father did not request the court modify its previous order granting mother sole physical and legal custody and that order remained in place.

The parties then turned to child support issues. Father submitted an Income and Expense Statement indicating he was unemployed. On cross-examination, he admitted to running several restaurants but claimed he received no income from these operations, which had been affected by the pandemic. He acknowledged he had received substantial profits from his businesses in 2019. He also admitted he received $2,600 a month to take care of his parents.

The trial court found father was not credible. Although he claimed he was unemployed, he admitted he continued to operate several businesses, including opening a new downtown restaurant in 2020. Using the information father provided from 2019 and 2020, the trial court calculated father's monthly income as $13,925. The court ordered monthly child support in the amount of $3,763. On appeal, father does not contend the trial court erred when it calculated his monthly income or the amount of child support ordered.

Father timely appealed from the court's custody order issued on September 25, 2020.

## DISCUSSION[7]

We begin our analysis by stating what father does not challenge on appeal:  he does not challenge the court's visitation order, the domestic violence restraining order, or the child support order.  Nor is there any issue before us concerning father's original parentage petition.  His appeal is limited to the custody order.

Father argues that if he had been fully advised of the presumption created by section 3044 and its impact on subsequent custody orders, he would have tried harder or hired a better lawyer to dispute the finding that he perpetrated domestic violence against mother.  Father thus faults the trial court for failing to provide him notice and a copy of section 3044 before the domestic violence finding, failing to consider mother's alcohol abuse when it granted mother sole custody, and failing to grant him a continuance to hire new counsel.  We conclude none of these claimed errors require reversal.

## 1.    *Procedural Errors Related to Section 3044*

Father asserts the trial court failed to determine prior to issuing the custody order whether section 3044 applied.  In a related argument, father complains that the court did not provide a copy of section 3044 to the parties as required under subdivision (h) of that section.

---

[7]    Although mother requested, and this court granted, several extensions of time, she did not file a respondent's brief.  We therefore decide this case based on the record, father's opening brief and father's oral argument.

## A. Section 3044

A custody award may only be made if it is in "the best interest of the child." (§ 3040, subd. (d); *In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 955.) "When determining the best interest of the child, relevant factors include the health, safety and welfare of the child, any history of abuse by one parent against the child or the other parent, and the nature and amount of contact with the parents. (§ 3011.)" (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255.)

The Legislature has declared that "the perpetration of child abuse or domestic violence in a household where a child resides is detrimental to the health, safety, and welfare of the child." (§ 3020, subd. (a).) Thus, "section 3044 establishes a rebuttable presumption that it is not in the child's best interest to award joint or sole legal or physical custody to a parent who a court has found to have committed domestic violence against the other parent within the previous five years. (§ 3044, subds. (a), (d)(2).) The presumption can only be rebutted if the court finds both that the perpetrator of domestic violence has demonstrated it is in the child's best interest to grant the perpetrator custody and the enumerated factors on balance support the legislative findings in section 3020. (§ 3044, subd. (b).) When a party in a custody proceeding has alleged the other party has perpetrated domestic violence, the court is required to: (1) inform the parties of the existence of section 3044 and give them a copy of the section prior to custody mediation (§ 3044, subd. (h)); and (2) in an evidentiary hearing or trial in which custody orders are sought, determine whether section 3044 applies before issuing a custody order (§ 3044, subd. (g))." (*Noble v. Superior Court* (2021) 71 Cal.App.5th 567, 571.)

## B.     Proceedings Below

The parties were ordered to attend mediation on September 18, 2020, "to discuss any disagreements about the custody and/or visitation of the child(ren)."  Four days prior to the scheduled mediation, at the time the court found father had perpetrated domestic violence against mother and granted her a five-year restraining order, the court advised father:  "then with respect to the DV-140, the custody and visitation, there's a presumption when I found that you committed at least one act of abuse which is what I have found that it's not in the [children's] best interest for you to have sole, or joint custody of them given what I've found."[8]  Mother's counsel then suggested, "So the court is making its finding under the Family Code that respondent inflicted domestic violence for purposes of child custody."  The court responded, "3044, yes, yes, yes.  I do find that the Family Code 3044 applies in this case.  At this point I don't find that [father] has rebutted the presumption that it's not in the [children's] best interest for him to have sole or joint custody."

## C.     The Trial Court Timely Found Section 3044 Applied

Father first asserts the trial court failed to determine whether section 3044 applied *prior* to issuing its custody order, in violation of section 3044, subdivision (g).  The record shows otherwise.  At the hearing on September 14, 2020, the trial court cited to section 3044, found it applied, and advised father of the

---

[8]     Courts typically use Judicial Council form DV-140 to issue custody and visitation orders.  Here, the court issued DV-140 after the September 14, 2020 hearing to grant legal and physical custody over all three children to mother.  The court granted father supervised visitation.

10

presumption.  Father thus had notice of the presumption 11 days before the September 25, 2020 hearing on custody, visitation, and child support.  We conclude the trial court complied with section 3044.

Father appears to confuse the court's temporary order granting sole custody to mother "for now" with its final order issued after the hearing on September 25, 2020.  Father has presented no authority for the proposition that section 3044's notice requirement applies in this setting.  On the contrary, section 3044 contemplates a temporary custody order may issue prior to a final determination of the applicability of section 3044: If the court finds that "a continuance is necessary to determine whether this section applies, . . . the court may issue a temporary custody order for a reasonable period of time, provided the order complies with Sections 3011 and 3020."[9]  (§ 3044, subd. (g).)

### D. Father Has Forfeited His Claim That the Trial Court Failed to Provide Father With a Copy of the Statute

Father next asserts "the record reflects that the trial court never gave [father] a copy of [section] 3044."  We agree the statute requires delivery of a copy of the statute before the mediation date.  Father, who was represented by counsel at the September 14, 2020 hearing, did not object when the court allegedly failed to provide a copy of the statute, before or after the court specifically cited to section 3044.  Father has therefore forfeited this claim.  (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.)

---

[9]  We discuss section 3011 separately.  Father makes no argument pertaining to section 3020.

11

Even if father did not forfeit the argument, any error was undoubtedly harmless. Father must show it is reasonably probable he would have achieved a more favorable result in the absence of the error. (Code Civ. Proc., § 475; *In re Marriage of Goddard* (2004) 33 Cal.4th 49, 56 [" 'any error as to any matter of procedure' is subject to harmless error analysis and must have resulted in a 'miscarriage of justice' in order for the judgment to be set aside"].)

Father contends he was prejudiced by the court's failure to provide him with a copy of the statute because he was not given notice of the presumption, which led to his loss of custody and resulted in limited, monitored visitation with the children. We fail to see how the failure to receive a copy of the statute, if that were the case, led to his loss of custody. The trial court advised father of the presumption and cited the statute in open court at a hearing where father was represented by counsel. The failure to have a piece of paper did not contribute to loss of custody.[10]

---

[10] Father contends in passing that the trial court violated (former) rule 5.19(a)(3) of the Los Angeles Superior Court Local Rules, which requires the parties seeking child custody or visitation orders to participate in court-connected mediation prior to appearing at a hearing or trial regarding the custody or visitation of their children. The court complied with this rule by setting the mediation for September 18, 2020, before the September 25, 2020 hearing on custody, visitation, and support. The record does not show whether a mediation took place, and father does not show prejudice from any non-compliance with the rule.

### *2.* *Father Forfeited His Section 3011 Argument*

Father next contends the trial court failed to take into account mother's alcoholism as required by section 3011 when it made its custody orders.[11]  Father forfeited this challenge to the court's custody order because he failed to raise it below.  (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184–185, fn. 1 (*Doers*).)  At the September 25, 2020, final custody and support hearing, father did not seek sole or joint custody of the children, nor did he argue that the court should consider mother's alcohol abuse as a factor in the ruling the court made that day.[12]  Instead, the parties focused on visitation and amount of support.

---

[11]     A court must consider a parent's alleged "habitual or continual abuse of alcohol" in making a determination of the best interests of the child in a custody proceeding.  (§ 3011, subd. (a)(4).)  The court must state its reasons when it makes an order for sole or joint custody in favor of the parent against whom the allegation has been made.  (§ 3011, subd. (a)(5).)

[12]     Father contends he attempted to proffer evidence of mother's drinking at the domestic violence hearing to show she initiated certain incidents because she had been drinking.  The trial court properly found that evidence was irrelevant to whether father perpetrated domestic violence.  Father's counsel did not argue the evidence was relevant to custody at the time of the proffer.

### 3. The Trial Court Did Not Abuse Its Discretion in Denying Father a Continuance

Lastly, father contends the court erred when it denied his request for a continuance at the September 25, 2020 custody and child support hearing.[13]

We review a trial court's order denying a continuance for an abuse of discretion. (*Reales Investment, LLC v. Johnson* (2020) 55 Cal.App.5th 463, 468.) To warrant a continuance, the moving party must establish good cause. (Cal. Rules of Court, rule 3.1332(c).) Substitution of trial counsel may constitute good cause for a continuance, "but only where there is an affirmative showing that the substitution is required in the interests of justice[.]" (*Id.*, rule 3.1332(c)(4); *Lazarus v. Titmus*, *supra*, 64 Cal.App.4th at p. 1250.) Courts have long held, " 'Parties litigant have no absolute right to insist upon a change of counsel at the last moment before the time set for the commencement of the trial, where such change of counsel requires a continuance in order that the case may be properly prepared for trial.' " (*County of San Bernardino v. Doria Mining & Engineering Corp.* (1977) 72 Cal.App.3d 776, 783–784; *Agnew v. Parks* (1963) 219 Cal.App.2d 696, 701–702.)

Here, father decided to fire his attorney the day before the hearing, which was scheduled at the time father filed his parentage petition, three months before. His reason was that he believed his attorney was not prepared. He did not elaborate on

---

[13] As part of his argument, father claims he did not receive statutory notice that mother was seeking child support. Father failed to raise the issue of adequate notice at the time of the hearing, again forfeiting the issue. (*Doers*, *supra*, 23 Cal.3d at p. 185, fn. 1.)

counsel's claimed lack of preparation.[14]  Father knew the hearing would cover custody, visitation, and child support issues.  Having voluntarily relieved his attorney at this late date, father was not entitled to a continuance based solely on his status as a self-represented litigant.  (*Agnew v. Parks, supra,* 219 Cal.2d at p. 702.)  The trial court did not abuse its discretion when it denied the request for a continuance.

Father also asserts that, in ruling on the requested continuance, the trial court failed to consider any of the factors listed in California Rules of Court, rule 3.1332.[15]  Rule 3.1332 does not require express findings and father has not cited any appellate authority for that proposition.  We instead apply fundamental principles of appellate review to affirm the denial order:  "(1) a judgment is presumed correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the appellant bears the burden of providing an adequate record

---

[14]     Father merely stated, "There is inadequate representation on my side, and as I was getting closer and closer I see that this attorney that I hired was not going to be prepared, as he was last time, and I made the final decision yesterday as we were getting close that this guy was not going to be prepared at all, and he didn't have his game plan."

[15]     California Rules of Court rule 3.332(d) requires the court to "consider all the facts and circumstances that are relevant to the determination" including whether there was any previous continuance, the length of the continuance requested, the prejudice that parties or witnesses will suffer as a result of the continuance and "[a]ny other fact or circumstance relevant to the fair determination of the motion or application."

affirmatively proving error." (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58.)

### *DISPOSITION*

The order is affirmed.


RUBIN, P. J.

WE CONCUR:


BAKER, J.


MOOR J.